UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHANTOM VENTURES LLC,    *
      *
    Plaintiff,    *
      *
    v.    *    Civil Action No. 15-cv-13865-IT
      *
JOHN DEPRIEST, JANICE TATARKA,    *
ARTHUR ARSENAULT, JOSEPH    *
MAHONEY, MARILYN VEGA-TORRES, *
and THE CITY OF CHELSEA,    *
      *
    Defendants.    *

MEMORANDUM & ORDER

March 7, 2017

TALWANI, D.J.

Plaintiff Phantom Ventures, LLC, appeals the City of Chelsea Zoning Board of Appeals'

("Zoning Board") denial of a building permit to renovate a building for a live nude dancing

venue with the sale of food and alcohol. Am. Compl. 1 [#19]; Defs.' Resp. Pl.'s Facts Ex. 13

[#31-13].[1] The Zoning Board found that live nude dancing was not permitted where the building

is located. Plaintiff's Amended Complaint ("Complaint") [#19] seeks a declaratory judgment that

the decision of the Zoning Board was incorrect or that the proposed use is grandfathered based

on the prior owner's use of the property. In the alternative, Plaintiff challenges Chelsea's Code

of Ordinances (the "Code") as unconstitutional in several respects. Currently pending before the

court is Plaintiff's Motion for Partial Summary Judgment [#22] and Defendants' Cross-Motion

for Summary Judgment [#29]. For the following reasons, Plaintiff's Motion for Summary

---

[1] The named Defendants are the City of Chelsea, Massachusetts, and the individual members of
the Zoning Board.

Judgment [#22] is GRANTED IN PART and DENIED IN PART. Defendant's Cross-Motion for Summary Judgment [#29] is GRANTED IN PART and DENIED IN PART, and the matter is REMANDED to the Zoning Board for further consideration of Plaintiff's permit application.

I.     **Facts**[2]

    A. The Code of Ordinances of the City of Chelsea at the Time the Dispute Commenced

As adopted in 2005, the Code includes zoning regulations to "promote the health, safety and general welfare of the inhabitants of the city." Chelsea, Ma., Code of Ordinances ch. 34 § 34-1. The Code divides the City of Chelsea ("the City") into fourteen districts, delineating the types of buildings and activities that are permitted in each. Chelsea, Ma., Code of Ordinances ch. 34 § 34-27. The districts include various residential districts, business districts (including the Retail Business District, the Highway Business District, and the Shopping Center District), industrial districts (including the Industrial District where the property at issue is located), and other districts. Chelsea, Ma., Code of Ordinances ch. 34, §34-27(a).

The purpose of the Industrial District "is to provide for research, manufacturing, wholesaling, and related distribution activities in locations with suitable access and where such activities can occur without an adverse impact on residential areas." Chelsea, Ma., Code of Ordinances ch. 34, §34-27(k). The purpose of the Highway Business District "is to provide areas for retail businesses serving vehicles and for automotive sales and services." Chelsea, Ma., Code of Ordinances ch. 34, §34-27(h). The purpose of the Shopping Center District "is to provide areas of retail and services development with more than one establishment on one lot with shared common facilities and on-site parking." Chelsea, Ma., Code of Ordinances, §34-27(i). The

---

[2] Unless otherwise indicated, these facts are taken from the parties' Local Rule 56.1 statements and responses, and are undisputed or not properly disputed for purposes of summary judgment. See Fed. R. Civ. P. 56(c), (e)(2).

purpose of the Retail Business District is to provide a downtown area with the range of business sales and services which generally constitute a central business district. Chelsea, Ma., Code of Ordinances ch. 34, §34-27(f).

The Code provides a table of principal use regulations denoting where specific activities or buildings may be located within the fourteen districts in the City. Chelsea, Ma., Code of Ordinances, ch. 34 §34-300. The Code also states that if an activity can be classified under more than one of the described uses, the more specific, more restrictive classification shall govern. Chelsea, Ma., Code of Ordinances, ch. 34, §34-49(c). The Code states further that "[a]ny building or use of premises not herein expressly permitted is hereby prohibited." Chelsea, Ma., Code of Ordinances ch. 34 §34-49(a).

"Art use" is allowed within the Industrial District without any need for a special permit, and in the Retail Business District and Highway Business District with a special permit. Chelsea, Ma., Code of Ordinances, ch. 34 §34-300. The Code defines Art use as "the creation, manufacture or assemblage of visual art, including two or three dimensional works of fine art or craft, or other fine art objects created, manufactured or assembled for the purpose of sale, display, commission, consignment or trade by artists or artisans; or classes held for art instruction." Chelsea, Ma., Code of Ordinances, ch. 34 §34-241.

"Theaters, concert halls and cinemas" are allowed in the Retail Business District and Shopping Center District without a special permit, and in the Industrial District with a special permit. Chelsea, Ma., Code of Ordinances, ch. 34 §34-300. Restaurants, with or without the sale of alcohol, are allowed in the Retail Business District, Highway Business District, and Shopping Center District without a special permit, and are not allowed in the Industrial District. Chelsea, Ma., Code of Ordinances, ch. 34 §34-300.

"Adult entertainment establishments" are allowed by special permit within the Highway Business District and Shopping Center District, and not permitted in the Industrial District. Chelsea, Ma., Code of Ordinances, ch. 34 §34-300. At the time of the permit denial, the Code provided that Adult entertainment establishments included and were defined as "(1) Adult bookstore means an establishment having as a substantial or significant portion of its stock in trade books, magazines and other matter which are distinguished or characterized by their emphasis depicting, describing or relating to sexual conduct or sexual excitement as defined in M.G.L. c. 272, § 31" and "(2) Adult motion picture theater means an enclosed building used for presenting material distinguished by an emphasis on matter depicting, describing, or relating to sexual conduct or sexual excitement as defined in M.G.L. c. 272, § 31." Chelsea, Ma., Code of Ordinances, ch. 34 §34-241.

B.  The Property's Prior Use

Beginning in the late 1970s, the property at 200 Beacham Street ("the property") was operated under the name King Arthur's Motel and Lounge ("King Arthur's") as an entertainment facility with live adult nude dancing. Pl.'s Rule 56.1 Statement Material Facts, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Facts") 3 [#23], Defs.' Resp. Pl.'s Facts ("Defs.' Facts") ¶ 3 [#31]. King Arthur's closed in 2014. Defs.' Facts ¶ 20 [#31], Ex. 8 [#31-8].

C.  The Permit Request and Denial

Plaintiff is a licensee of the lessee of the current property owner. Pl.'s Facts 2 [#23]. On June 10, 2015, Plaintiff applied for a building permit to renovate the property for use as a "nude adult cabaret/sports bar." Id. at 3, Ex. A 28 [#24-1]; Defs.' Facts ¶ 4. Chelsea's Zoning Enforcement Officer denied the application, stating that "adult entertainment establishments are not a permitted use within the Industrial Zoning District, in which this structure is located." Aff.

of Thomas S. Fitzpatrick in Supp. Pl.'s Mot. Partial Summ. J ("Fitzpatrick Aff.") [#24] Aff. Ex. 1 ("Denial Letter") 18 [#24-1]; Pl.'s Facts 3 [#23]; Defs.' Facts ¶ 5 [#31]. The Denial Letter explained that "adult entertainment establishments" were permitted by special permit within the Highway Business District and Shopping Center District. Id. The Denial Letter further stated that while the previous use at the property was an adult entertainment establishment "as is defined in the City of Chelsea Ordinances," the proposed use did not have pre-existing, non-conforming use protection. Id. (citing Mass. Gen. Laws, ch. 40A § 6 (2016)).

Plaintiff appealed the denial of the building permit, arguing that a nude adult cabaret/sports bar was an "Art use" under the Code, and was not an "adult entertainment establishment" as the Zoning Enforcement Officer found. Pl.'s Fact 3 [#23]; Defs.' Fact ¶ 6 [#31], Fitzpatrick Aff. Ex. A 2 [#24-1]. In the alternative, Plaintiff argued that the proposed use was grandfathered. Fitzpatrick Aff. Ex. A 13 [#24-1]. The Zoning Board held a public hearing on the appeal. Pl.'s Facts 3 [#23]; Defs.' Facts ¶ 8. At the close of the public hearing, the Zoning Board unanimously voted to uphold the denial of the building permit. Pl.'s Facts 4 [#23]; Defs.' Facts ¶ 9 [#31]. On October 5, 2015, the Zoning Board filed its written decision upholding the denial of the permit with the City Clerk. Pl.'s Facts 4 [#23]; Decision of Zoning Board of Appeals 3 [#24-1]. This action followed.

D.   The Amendment of the Code

On November 7, 2016, while this action was pending, the Chelsea City Council voted to amend the definition of "adult entertainment establishment" under the Code. Defs.' Additional Papers in Supp. Pending Mot. Summ. J. 2 ["Defs.' Additional Papers"] [#55]. As amended, "adult entertainment establishments" now includes "adult bookstores, adult motion picture theaters, adult paraphernalia stores, adult video stores, *or establishments which display live*

*nudity for their patrons* as defined by Chapter 40A, Section 9A of the Commonwealth of

Massachusetts General laws, as amended . . . ." <u>Id.</u> (emphasis added).

## II.     <u>Standard</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st

Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is proper

when "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the

evidence about the fact is such that a reasonable jury could resolve the point in the favor of the

non-moving party. A fact is material if it has the potential of determining the outcome of the

litigation." <u>Patco Constr. Co. v. People's United Bank</u>, 684 F.3d 197, 206-07 (1st Cir. 2012)

(internal quotation marks and citations omitted). In ruling on a motion for summary judgment,

the court views the record in the light most favorable to the nonmovant and draws all reasonable

inferences in the nonmovant's favor. <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).

## III.    <u>Analysis</u>

### A.   <u>The Revision to the Code Does Not Moot the Case</u>

Defendants contend that Plaintiff's suit has been mooted by the City of Chelsea's

adoption of a revised definition of "adult entertainment establishment." Defs.' Suppl. Mem. 6

[#47]. Plaintiff responds that regardless of the amendment, Plaintiff was wrongly denied its

permit in June 2015, and that at the time, "the issuance of [the] permit [was] a matter of duty, not

discretion." Pl.'s Reply Defs.' Suppl. Mem. 15 [#50] (citing <u>Framingham Clinic, Inc. v. Zoning</u>

<u>Bd. Of Appeals of Framingham</u>, 415 N.E. 2d 840, 849 (Mass. 1981)). Plaintiff argues further that

its facial challenges under both the First Amendment and Article 16 of the Declaration of Rights in the Massachusetts Constitution must be considered. Am. Compl. ¶¶ 98-106.

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (plurality opinion) (internal quotation marks omitted). Here, Plaintiff continues to seek redress for the denial of the permit in 2015, and continues to challenge the constitutionality of the Code so that it may obtain a permit now. Except as to the question of whether the "adult entertainment establishment" included nude dancing at the time of permit decision, the issues presented remain live and the parties have legally cognizable interests in the outcome.

B.  Plaintiff Is Not Entitled to a Declaration that the Proposed Use Is an Art Use

Plaintiff argues that it was entitled to a building permit when it applied because live adult nude dancing was not specifically delineated as an activity within the Code prior to the recent amendment, and the Zoning Board should have found that adult live nude dancing was an "Art use" permitted as of right in the Industrial District. Defendants contend that the Zoning Board correctly found that live adult nude dancing was not an "Art use."

Court review of a decision of a zoning board of appeals is an essentially legal analysis "to decide whether the board's decision was based on a 'legally untenable ground,' or, stated in a less conclusory form, on a standard, criterion, or consideration not permitted by the applicable statutes or by-laws. Here, the approach is deferential only to the extent the court gives 'some measure of deference' to the local board's interpretation of its own zoning by-law." Britton v. Zoning Bd. of Appeals of Gloucester, 794 N.E.2d 1198, 1203 (Mass. App. Ct. 2003) (internal quotation marks omitted). A judge must review with deference the legal conclusion within the authority of the board, and a reasonable construction that a zoning board of appeals gives to the

by-laws it is charged with implementing is entitled to deference. Wendy's Old Fashioned

Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, 909 N.E.2d 1161, 1167-68 (Mass.

2009); see also North Shore Realty Trust v. Com., 747 N.E.2d 107, 110 (Mass. 2001) ("If a

liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the

purpose indicated by the words as a whole, such interpretation is to be adopted rather than one

which will defeat the purpose. Zoning by-laws must be construed reasonably . . . [S]uch by-laws

should not be so interpreted as to cause absurd or unreasonable result when the language is

susceptible of a sensible meaning.") (citations and quotations omitted); Framingham Clinic, Inc.,

415 N.E. 2d at 845 ("In the absence of an express definition, the meaning of a word or phrase

used in a local zoning enactment is a question of law, and is to be determined by the ordinary

principles of statutory construction. Specific provisions of a zoning enactment are to be read in

the context of the law as a whole, giving the language its common and approved meaning

'without regard to . . . [the court's] own conceptions of expediency.'") (citations and quotations

omitted); Britton, 794 N.E.2d at 1203 (Mass. App. Ct. 2003) ("In the main, though, the court

determines the content and meaning of statutes and by-laws and then decides whether the board

has chosen from those sources the proper criteria and standards to use in deciding to grant or to

deny the variance or special permit application.").

The Zoning Board did not err in rejecting Plaintiff's contention that nude dancing falls

within the definition of Art use. Art use is defined as "the creation, manufacture or assemblage of

visual art, including two or three dimensional works of fine art or craft, or other fine art objects

created, manufactured or assembled for the purpose of sale, display, commission, consignment or

trade by artists or artisans; or classes held for art instruction." Chelsea, Ma., Code of Ordinances,

ch. 34 §34-241. On its face, this definition is focused on the creation of physical objects, not

performance art, such as dancing. Moreover, "creation," "manufacturing" and "assemblage" of items are activities that typically use tools and supplies, and do not require parking for audiences or customers. These activities fit squarely within the purpose of the Industrial District of providing "for research, manufacturing, wholesaling, and related distribution activities in locations with suitable access and where such activities can occur without an adverse impact on residential areas." Construing the "creation, manufacture or assemblage of visual art manufacture of visual art, including two or three dimensional works of fine art or craft, or other fine art objects created, manufactured or assembled for the purpose of sale, display, commission, consignment or trade by artists or artisans" to include dancing would be inconsistent with the plain language of the Code.

Accordingly, Plaintiff is not entitled to a declaratory judgment that its proposed use was an "Art use" under the Code prior to its amendment.

C.   Plaintiff's Proposed Use Is Not Grandfathered

Plaintiff also claims that the business should be allowed as of right as a pre-existing use under state law. The "grandfather" provision of the Massachusetts zoning enabling statute provides that "a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun . . . but shall apply to any change or substantial extension of such use . . . ." Mass. Gen. Laws ch. 40A § 6. The provision states further, however, that it "shall not apply to establishments which display live nudity for their patrons, as defined in section nine A, adult bookstores, adult motion picture theaters, adult paraphernalia shops, or adult video stores subject to the provisions of section nine A." Id. This exception, added in 1996, specifically separates live adult nude dancing from grandfather protection. 1996 Mass. Acts 1348-49; see also D.H.L. Assoc., Inc. v. Bd. of Selectmen of Tyngsborough, 833 N.E.2d 149, 152 (Mass. App.

2005) (finding that "this statutory provision has prohibited 'establishments which display live nudity' from receiving nonconforming use protection since 1996").

Accordingly, Plaintiff is not entitled to a declaratory judgment that its proposed use of the property is grandfathered.

D.  Plaintiff's Constitutional Challenges

The Complaint challenges the Code on constitutional grounds in three respects: 1) that the Code effectively bans nude dancing altogether, 2) that the Code unconstitutionally requires "adult entertainment establishments" to apply for a special permit, and the Code's special permit process is unconstitutional because it vests the Zoning Board with unfettered discretion to approve or deny special permits for "adult entertainment establishments," and 3) that the Code's restrictions on "adult entertainment establishments" were not enacted to further a substantial government interest. Defendants move for summary judgment as to each constitutional challenge; Plaintiff cross-moves that the court should find the "adult entertainment provisions" to be facially invalid as unlawful prior restraints on speech.

1.  Plaintiff Has Not Shown that the Code Effectively Bans Nude Dancing Altogether

The Supreme Court has held that nude dancing is expressive conduct that falls within the "outer ambit" of First Amendment protection. Pap's A.M., 529 U.S. at 289. Despite such protection, towns have the ability to place some zoning restrictions on adult entertainment. City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 430 (2002) (upholding a city ordinance regulating the number of adult businesses in a building); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986) (upholding a restriction on the placement of adult motion picture theaters). When examining municipal restrictions on expressive conduct, courts consider first whether the ordinance amounts to a total ban on the use or whether the restrictions leave open

adequate "alternative avenues of communication." Renton, 475 U.S. at 47. Plaintiff argues that there are no suitable sites available in the Highway Business and Shopping Center Districts where an "adult entertainment establishment" could locate, and therefore the Code works to effectively ban "adult entertainment establishments" altogether.

Determining whether reasonable alternative methods of expression have been left open is a fact specific analysis, where no one factor is dispositive. Lund v. City of Fall River, 714 F.3d 65, 72 (1st Cir. 2013). Courts may consider, among other things, the percentage of land available and the number of sites available. Id. In performing this analysis, courts have generally been willing to accept as reasonable extremely small percentages of land left available. Id. at 69 (holding that .24% of land open to "adult entertainment establishments" was sufficient); see Renton, 475 U.S. at 64 (upholding an ordinance that restricted "adult entertainment establishments" to 5% of the city). In determining the land left available to these establishments, the court considers only restrictions put into effect by the government, and not those instigated by market forces. Lund, 714 F.3d at 70. The fact that the regulation leaves the affected individual(s) to "fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees" does not render the regulation unconstitutional. Renton, 475 U.S. at 65; Lund, 714 F.3d at 70 ("The proper enquiry looks to restrictions imposed by the government, not the market effects of other people's commerce or the economics of site clearance."). In Lund, a case similar to the one presented, the court upheld the ordinance under circumstances where only 28.53 acres, consisting of eight sites or .24% of the land, remained available to the plaintiff. 714 F.3d at 67-68.

Plaintiff offers no evidence to support the contention that there is no available land in the Highway Business or Shopping Center Districts. Defendants submitted the affidavit of John

DePriest, the Director of Planning and Development for the City of Chelsea. DePriest Aff. Ex.

11 [#31-11]. DePriest stated that "[b]ased on rough measurements, the [Shopping Center]

District contains approximately 62.8 acres and the [Highway Business] District contains

approximately 8.2 acres, for a total of 71 acres. At 2.0 square miles (including the rivers) the

City is 1280 acres in size making 5.5 percent of the City available for adult entertainment uses."

Id. at ¶¶ 8-9. Plaintiff does not dispute the acreage calculation (Pl.'s Resp. Defs.' Facts ¶ 41

[#37]), but argues that just because that acreage is available does not mean that it is available for

"adult entertainment establishments." Id. at ¶ 42. Absent contrary evidence that there is no land

available for an "adult entertainment establishment" in the City, Plaintiff has not demonstrated

that the Code is an unconstitutional total ban on "adult entertainment establishments." See

Renton, 475 U.S. at 46 (restricting adult establishments to a particular location is not a total ban).

　　　　2.　Discretion of the Zoning Board in the Special Permit Process is Not
　　　　　　Unconstitutional

Plaintiff also argues that the Code is facially unconstitutional because the special permit

process vests too much discretion in the Zoning Board. Pl.'s Mem. Supp. Summ. J. 15 [#23].

Facial challenges are permitted in the First Amendment context because of concern for

the potential chilling effects on protected speech. City of Lakewood v. Plain Dealer Pub. Co.,

486 U.S. 750, 755 (1988) ("[O]ur cases have long held that when a licensing statute allegedly

vests unbridled discretion in a government official over whether to permit or deny expressive

activity, one who is subject to the law may challenge it facially without the necessity of applying

for, and being denied, a license.").[3] Courts have characterized facial challenges as a "last resort"

---

[3] Defendants argue that Plaintiff is prohibited from bringing a facial challenge here because it failed to notify the Attorney General before bringing this action. Under Mass. Gen. Laws ch. 231A § 8, when seeking declaratory relief concerning the validity or constitutionality of a municipal ordinance, a party shall notify the attorney general, who is entitled to be heard. Mass. Gen. Laws ch. 231A § 8; Wright v. Wright, 774 N.E.2d 179, at *2 (Mass. App. Ct. 2002)

or "an uphill climb." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998);

McGuire v. Reilly, 260 F.3d 36, 47 (1st Cir. 2001) ("[A] party who mounts a facial challenge to

a statute must carry a significantly heavier burden than one who seeks merely to sidetrack a

particular application of the law."). A Plaintiff mounting a facial attack must establish "that no

set of circumstances exists under which [the law] would be valid." United States v. Stevens, 559

U.S. 460, 472 (2010) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

A special permit mandate will be considered an invalid prior restraint if it "vest[s] in a

government official overly broad discretion to grant the license, if they fail to place a limit on the

time within which the decision maker must decide whether a license shall issue, or if they are not

subject to ordinary judicial review." T&D Video, Inc. v. City of Revere, 848 N.E.2d 1221, 1233

(Mass. Ct. App. 2006) (aff'd on merits, T&D Video, Inc. v. City of Revere, 854 N.E. 2d 441

(Mass. 2006), rev'd and remanded on question of attorneys' fees by T&D Video, Inc. v. City of

Revere, 876 N.E. 2d 842 (Mass. 2007)). The doctrine "guards against the threat of government

censorship by requiring the public licensing and permit schemes contain adequate substantive

and procedural safeguards against arbitrary (or content based) state action." New England Reg'l

Council of Carpenters v. Kinton, 284 F.3d 9, 21 (1st Cir. 2002). Plaintiff contends that the Code

is invalid due to its broad grant of discretion. A licensing obligation may grant too much

---

(holding that a constitutional challenge would not be heard until the Attorney General had been notified). Massachusetts Rule of Civil Procedure 24(d) requires further that notification to the Attorney General must be made "within sufficient time to afford him an opportunity to intervene." Mass. R. Civ. P. 24(d). On May 31, 2016, Plaintiff filed a notice that they had notified the Attorney General, and that the office had declined to intervene in the action at this time. Notice of Compliance [#36]. These requirements are thus satisfied.

Defendant also contends that if Plaintiff is attacking the constitutionality of an ordinance, the Attorney General would be a required party. The statute does require that the municipality be a party, but as to the Attorney General, requires only timely notice and the opportunity to be heard. Mass. Gen. Laws ch. 231A § 8.

discretion unless there are "narrowly drawn, reasonable and definite standards." <u>Forsyth Cty, Ga. v. Nationalist Movement</u>, 505 U.S. 123, 133 (2003).

The special permit provision of the Code states that, "[s]pecial permits shall be granted by the special permit granting authority, unless otherwise specified herein, only upon its written determination that the benefit to the city and the neighborhood outweigh the adverse effects of the proposed use, taking into account the characteristics of the site and of the proposal in relation to that site." Chelsea, Ma., Code of Ordinances, ch. 34 §34-214. The Zoning Board must consider each of the following factors:

> (1) Social, economic or community needs which are served by the proposal;
>
> (2) Traffic flow and safety, including parking and loading;
>
> (3) Adequacy of utilities and other public services;
>
> (4) Neighborhood character and social structures;
>
> (5) Impacts on the natural environment, including drainage; and
>
> (6) Potential fiscal impact, including impacts on city services, tax base and employment.

<u>Id.</u>

Plaintiff contends that Chelsea's special permit procedure improperly provides for unlimited discretion to the authorizing agency. Plaintiff appears to argue that the inclusion of any discretion in the special permit process is fatal for a prior restraint analysis. Plaintiff relies on <u>T&D Video</u>, where the court found that although the ordinance set forth various conditions for a permit, the city council retained too much discretion where it remained "free to withhold a special permit for an adult use *for any reason*." 848 N.E.2d at 1233 (emphasis added).

Chelsea's treatment of special permits is closer to that of the Chicago Park District, which was upheld by the Supreme Court in <u>Thomas v. Chicago Park Dist.</u>, 534 U.S. 316 (2002). In that case, a permit was needed for a gathering of more than 50 people, and the provision in question stated that the application could be denied based upon 13 grounds, and must be clearly set forth in writing. <u>Id.</u> at 318. Those grounds included unreasonable danger to the health or safety of park users. <u>Id.</u> at 324. The court found the standards to be "reasonably specific and objective." <u>Id.</u> Here, the Code lays out six criteria that "shall" be considered and included in any written determination. Chelsea, Ma., Zoning Ordinance § 34-214. While some of the criteria are subjective, such as the "social, economic or community needs which are served by the proposal," many are specific, such as considerations of traffic flow, utilities, and fiscal impact. <u>Id.</u>

The Supreme Court found further that, at least on a facial challenge, the ordinance should be upheld even though the language suggested the grounds on which the Park District "may" deny the permit, rather than on grounds on which they "must" deny the permit. <u>Thomas</u>, 534 U.S. at 324; <u>see</u> <u>also</u> <u>Sullivan v. City of Augusta</u>, 511 F.3d 16, 35-36 (1st Cir. 2007) (discretion in deciding permitting fee permissible under First Amendment analysis). Given this is a facial challenge to the special permit process, Plaintiff has not met its burden. <u>Del Gallo v. Parent</u>, 557 F.3d 58, 68 (1st Cir. 2009) ("In a facial attack case, it is plaintiff's burden to show that the law has no constitutional application.") (citation omitted). The Code's requirement that the Zoning Board consider six mandatory criteria and that the decision be written distinguishes this case from those in which ordinances were invalidated for having too much discretion.

For the foregoing reasons, the court finds that Chelsea's special permit requirements are not a per se invalid prior restraint.

3. <u>The Code's Requirement that "Adult Entertainment Establishments" Be Located in the Business Highway or Shopping Center District Is Not Narrowly Tailored to Serve a Substantial Government Interest</u>

Plaintiff also argues that the Code is an unconstitutional time, place, and manner restriction because it allows "adult entertainment establishments" only in certain districts within the City. Pl.'s Mem. Supp. Summ. J. 14 n.5 [#23].

The Supreme Court has held that there is no right to engage in expressive conduct "at all times and places or in any manner that may be desired." <u>Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.</u>, 452 U.S. 640, 647 (1981). A municipality may, when acting to further legitimate ends of the community, impose incidental burdens on expressive conduct. <u>See</u> <u>United States v. O'Brien</u>, 391 U.S. 367, 376 (1968).

When evaluating a time, place, and manner restriction, the court must first determine if the ordinance is content-based or content-neutral. An act is content based "if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." <u>McCullen v. Coakley</u>, 134 S. Ct. 2518, 2531 (2014) (quoting <u>Fed. Commc'n Comm'n v. League of Women Voters of Cal.</u>, 468 U.S. 364, 383 (1984)). Content based laws are subject to strict scrutiny. <u>Reed v. Town of Gilbert, Ariz.</u>, 135 S. Ct. 2218, 2226 (2015) ("A law that is content based on its face is subject to strict scrutiny . . . ."); <u>United States v. Playboy Entm't Grp., Inc.</u>, 529 U.S. 803, 814 (2000) ("As we consider a content based-regulation, the answer should be clear: The standard is strict scrutiny."). Strict scrutiny requires "the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." <u>Reed</u>, 135 S. Ct. at 2231 (internal quotation marks omitted). By contrast, a restriction is content-neutral if it can be "justified without reference to the content of the regulated speech." <u>Renton</u>, 475 U.S. at 48. A content neutral restriction is subject to

intermediate scrutiny, and must be narrowly tailored "to serve a substantial governmental interest" while "not unreasonably limit[ing] alternative avenues of communication." Id. at 47, 63.

Zoning regulations which attempt to control the secondary effects associated with adult entertainment have been found to be "content neutral." Id. at 47-48. In Renton, the Court found that the City of Renton's zoning ordinances treated theaters that specialized in adult films differently than other theaters, but nevertheless deemed the ordinance "content-neutral" because it was "aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community." Id. at 47; see also Alameda Books, Inc., 535 U.S. at 448 (Kennedy, J. concurring) (stating that describing such zoning ordinances as "content neutral" is a "fiction," but noting further that "zoning regulations do not automatically raise the specter of impermissible content discrimination, even if they are content based, because they have a prima facie legitimate purpose: to limit the negative externalities of land use."). Thus, a zoning ordinance that attempts to control the secondary effects associated with nude dancing, without restricting the "erotic message," would pass constitutional muster so long as it was narrowly tailored to serve a substantial government interest and allowed for reasonable alternative avenues of communication. Pap's A.M., 529 U.S. at 296 ("Even if the city thought that nude dancing at clubs like Kandyland constituted a particularly problematic instance of public nudity, the regulation is still properly evaluated as a content-neutral restriction because the interest in combating the secondary effects associated with those clubs is unrelated to the suppression of the erotic message conveyed by nude dancing."); Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 72 (1st Cir. 2014) ("Where regulatory distinctions are drawn between sexually-oriented businesses and their less prurient counterparts, therefore, the regulation is content neutral only if the differential treatment

does not stem from a disapproval of the former business-type's expression. Instead, regulations focused on secondary effects of adult entertainment . . . are considered content neutral . . . .").

The Code treats "adult entertainment establishments" differently from other entertainment facilities. Theaters, concert halls and cinemas, for example, are allowed (either as of right or by special permit) in the Business Retail, Shopping Center, and Industrial Districts. Restaurants serving alcoholic beverages are allowed (either as of right or by special permit) in the Business Retail, Highway Business, Business, and Shopping Center Districts. "Adult entertainment establishments," by contrast, are allowed only in the Highway Business and Shopping Center Districts, and then, only by special permit. Chelsea, Ma., Code of Ordinances, ch. 34 § 34-300.

Plaintiff argues that Chelsea has failed to show that the Code's requirements limiting "adult entertainment establishments" to the Highway Business or Shopping Center Districts were enacted as a means of ameliorating the secondary effects of adult entertainment. Plaintiff argues that Defendants have failed to produce evidence that secondary effects were considered by the City of Chelsea when enacting the Code, and that all of the evidence submitted by Defendants contain post hoc justifications for the restrictions.

Defendants respond with evidence to support their claim that King Arthur's, which preceded Plaintiff at this location, was rife with criminal activity,[4] required additional police resources, and that the remote location of the establishment facilitated the level of crime. Defs.' Facts ¶ 12; Id., Boston Globe Article Ex. 4 [#31-4] (describing a murder at the location); Id., Keith Houghton Aff. Ex. 1, 2-3 [#31-1] (The Affidavit of Keith Houghton ("Captain Houghton"), Captain for the City of Chelsea Police Department, stating that the previous adult

---

[4] The club was located in the same spot as Plaintiff's proposed business.

entertainment business at this location "was a center for criminal activity such as violent assaults, drunk and disorderly patrons and this type of criminal activity was a secondary effect of the adult entertainment business, the alcohol sale at the business, and the clientele attracted by the business and the lack of oversight by management" and claiming that this resulted in the direction of "police resources to conduct Impact Patrols to mitigate potential disturbances . . . which detracts from ability to patrol other areas of the City"); Id., Chelsea Police Log Ex. 1A [#31-1] (police call report indicating a high number of calls). Defendants argue that this evidence is sufficient to demonstrate that The Code is related to a substantial government interest. Defs.' Reply Mem. 11 [#39].

But Defendants have not provided evidence that the City of Chelsea actually sought to address this substantial government interest when the City first limited adult entertainment businesses to these locations, when it adopted Chapter 34 of the Code, or even when it most recently amended this provision.[5] Defendants have presented no evidence as to what matters were considered by the City in making its determinations that "adult entertainment establishments" are only allowed in the Highway Business and Shopping Center Districts, and only by special permit. Defendants present no studies that were used to decide why "adult entertainment establishments" are limited to the Highway Business or Shopping Center Districts.

"The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." Renton, 475 U.S. at 51-52; see also White River Amusement

---

[5] The 2012 copy of Chapter 34 submitted by Plaintiff, and certified by the City Clerk, includes annotations showing that the provisions at issue here were first enacted on June 20, 2005. The parties have provided no evidence, however, as to any prior versions of the provisions.

Pub., Inc. v. Town of Hartford, 481 F.3d 163, 170-171 (2d Cir. 2007) (collecting history of cases where evidence of secondary effects were used to justify a regulation and determining that Renton requires pre-enactment evidence); D.H.L. Assocs., Inc v. O'Gorman, 199 F.3d 50, 57-58 (1st Cir. 1999) (no error in finding that documents prepared for special town meeting prior to enactment of zoning ordinance, and testimony from chairman of board of selectman, supported finding that ordinance was designed to combat secondary effects). But a city must show that it was seeking to address the secondary problem that it now claims justifies the restriction. Showtime Entm't, LLC, 769 F.3d at 72 ("Mere reference to a neutral intent does not suffice to satisfy Mendon's burden to prove that its bylaws in fact further a substantial governmental interest unrelated to the content of the speech.").

The Supreme Judicial Court of Massachusetts has also held that pre-enactment evidence is required under Art. 16 of the Declaration of Rights of the Massachusetts Constitution. T&D Video, Inc. v. City of Revere, 670 N.E.2d 162, 165 (1996) ("Evidence concerning the governmental interest underlying a time, place and manner (content-neutral) ordinance is relevant only when it consists of information that the city council considered in making its determination to enact the ordinance."); Showtime Entm't, LLC v. Town of Mendon, 32 N.E.3d 1259, 1265 (Mass. 2015) ("The municipality cannot rationalize the restriction post hoc but must show the evidence it actually considered in enacting the restriction."). Here, there is no evidence on the record as to what the City of Chelsea relied upon when enacting its zoning ordinance.

The City has made no showing that the City of Chelsea sought to ameliorate the secondary effects of "adult entertainment establishments" by placing such businesses in the

Highway Business or Shopping Center District.[6] Section 34-300 of the Code's provision which requires "adult entertainment establishments" to be located in the Highway Business and Shopping Center Districts only by special permit is therefore unconstitutional under both the United States Constitution and Article 16 of the Declaration of Rights of the Massachusetts Constitution.[7]

Because Section 34-300 is unconstitutional, the decision of the Zoning Board relying on this section is therefore annulled. See Mass. Gen. Laws ch. 40A § 17 (the court shall "annul such decision if found to exceed the authority of such board . . . or make such other decree as justice and equity may require").

4. Severability of "Adult Entertainment Establishment" Section

Although the portion of Section 34-300 of the Code which requires adult entertainment establishments to be located by special permit in the Highway Business or Shopping Center Districts is facially unconstitutional, the Code as a whole does not need to be invalidated. "[A] court should refrain from invalidating more of the statute than is necessary  . . . [W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987) (internal quotation marks omitted) (quoting Regan v. Time, Inc., 468 U.S. 641, 652 (1984)). When a portion of an ordinance such as this one is found to be invalid, the doctrine of severability allows that section

---

[6] Compare with Renton in which the ordinance had an elaborate twenty point statement of reasons for its enactment. Playtime Theaters, Inc. v. City of Renton, 748 F.2d 527, 530 n.3 (9th Cir. 1984) (rev'd, Renton, 475 U.S. at 43).

[7] The court notes that the City of Chelsea's evidence of the secondary effects which were caused by the former nude dancing facility may adequately form the basis for a future amendment to, or reenactment of, the Code. Any amendment or reenactment must, however, seek to mitigate those secondary effects, and may not merely prohibit nude dancing altogether.

to be severed if the remaining portions are autonomous and the legislature's will in passing the entire statute is not thwarted by excision. Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 328-29 (2006) (stating that Supreme Court prefers to "sever [ ] problematic portions while leaving the remainder intact").

Striking the "adult entertainment establishment" portion of sections 34-300 of the Code would not render the remaining code contradictory or incoherent. The Code provides that "[w]hen an activity might be classified under more than one of the following uses, the more specific classification shall govern; if equally specific the more restrictive shall govern." City of Chelsea, Ma., Code of Ordinances, ch. 34 § 34-49(c). Plaintiff's proposed use could fall under other categories within the Code, such as a theater, concert hall and cinema. Accordingly, the court shall remand the case to the Zoning Board for further consideration consistent with this order.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [#22] is GRANTED as to Count III and IV, and DENIED in all other respects. Defendants' Cross-Motion for Summary Judgment [#29] is GRANTED with respect to Count I and II, and DENIED in all other RESPECTS. The permit application is REMANDED to the Zoning Board for further proceedings consistent with this order.

IT IS SO ORDERED.


Date: March 7, 2017                           /s/ Indira Talwani
                                              United States District Court